Gantt, J.,
dissented.
The prisoner, Casados, has been convicted under an Act of Assembly, passed in 1736, on a charge of stealing certain bank notes. The fact of his having taken the notes, was satisfactorily proved on the trial of the *60 case ; but whether that taking constituted felony within the purview and meaning of the above recited act, has been made a question. The words of the act are, “ if any person or persons shall steal or take by robbery any bond, warrant, bill or promissory note for the payment, or securing the payment of any money, *being the property of any other person or pérsons, or of any corporation, it shall be deemed felony,” &c. When the Act passed, there were no banking institutions in the country, and I think it fair to presume that the taking of that description of paper, was a mischief which never entered into the contemplation of the Legislature who passed the act. It was intended to embrace only those dioses in action afloat in the country ; and it may be presumed, from the wording of the clause,. (bill or promissory note being made to associate together,) that bills of exchange were intended. The law having' distinguished each of those dioses in action in a particular manner, and attached to each, qualifications not incident to other evidences'of debt. In the construction of penal statutes, I need not observe, that the law is guarded and circumspect, and does not allow that a liberal construction shall be given to it. But admit that it were otherwise : would it not be a strained and forced construction to say, that bank bills or notes were intended to be embraced by this act ? Bills ex vi termini do not necessarily include bank bills, and the usage and general understanding of mankind is opposed to such admission.
If, in a contract between A. and B., the former should agree to pay a certain sum in bills or promissory notes, would any person suppose that bank bills were intended f I think not; and there is much less reason to believe that under the term promissory notes, bank bills or notes were intended to be included. There is an obvious and marked discrimination, in common intendment, between promissory and bank notes. The latter have never been distinguished as promissory notes. In fact, bank paper, even at this day, is always designated by prefixing the word “ bank," and is as often called bank bills, as bank notes, so that it is yet uncertain which is the appropriate term to designate them by. That the Legislature have subsequently to the establishment of banks, provided a punishment for forging bank notes, when a similar law had been passed before in respect to promissory notes, is Conclusive as to the construction which that body have put upon these words, and evince a conviction on the mind of the Legislature, that there was a discrimination between them. When we contemplate, too, the nature of a corporation, and reflect that it is an invisible body, incapable of issuing a note of this kind for the payment of money without a power specifically given authorising the same, and then reflect, that the several notes mentioned in the indictment, were issued at a late period, and long subsequent to the passage of the act, it will necessarily follow, that they cannot, consistently, be identified with a species of paper of known and established signification, and which never did require legislative sanction to entitle the same to currency in the world. A bank note is rather evidence of money deposited in bank, than a promise by the President and Directors of the bank to pay money ; and as the President and Directors are not individually responsible, out of their private funds, for the payment of the note, this characteristic difference between bank paper and promissory notes, is conclusive to show that they are of different natures, *61 and cannot be embraced by the same term. It is said that judicial determination has sanctioned the construction given by the Attorney-General ; but in the construction of laws, so highly penal as the present, it belongs to existing Judges to think for themselves. This question admits at any rate of great doubt. The opinion of an eminent and excellent Judge, whose memory will ever be revered for the talents and virtues which he evidenced in life, Mr. Trezevant, was decidedly against the construction which has been given ; and my brother Nott, I am told, is of the same opinion. It is to be hoped, that the Legislature will, at an early period, provide for the punishment of this offence, in a way which will leave no doubt on the mind of the Judge, that in the discharge of the most awful and solemn duty which can devolve upon him, he has a sufficient warrant for the sentence which he pronounces. One which in my opinion does not at present exist, *although, with deference be it spoken, the sanction of the bench goes along with it.
Hunt, for the motion. Mchardson, Attorney-General, contra.